IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| MARIE E. BURRITT and R.E. BURRITT, | ) ) ) |
| Plaintiffs, | ) ) ) |
| v. | ) CIVIL ACTION NO. : 03-JEO-2638-W ) |
| RITE AID CORPORATION, | ) ) |
| Defendant. | ) |

**MEMORANDUM OPINION**

Plaintiffs Marie E. Burritt and R.E. Burritt ("the plaintiffs") filed this diversity action against the Rite Aid Corporation ("Rite Aid" or "the defendant") pursuant to 28 U.S.C. § 1332(a). (Doc. 1).[1] The plaintiffs allege that defendant's negligence or wantoness in leaving a slippery substance on the floor of its Northport, Alabama store caused Marie Burritt to slip and fall. She seeks relief in the form of compensation for medical expenses, lost wages, pain and suffering, emotional distress, and permanent physical injury (Count One at ¶ 7). (Doc. 1). R.E. Burritt seeks relief for the loss of the service, society and companionship of Marie, his spouse (Count Two at ¶ 9). (Doc. 1).

The defendant filed a motion to dismiss the plaintiffs' complaint under Rule 12(b)(6) of the FEDERAL RULES OF CIVIL PROCEDURE, asserting that it does not own the store where Marie Burritt allegedly fell. (Doc. 2). The defendant claims that it cannot be liable for a tort claim regarding this store since the store was not (and still is not) its store, but was instead owned and

---

[1] References herein to "Doc. __" are the numbers assigned to the various pleadings in the record as assigned by the Clerk of the Court. The numbers are located in the lower-right hand corner of each document.

operated by Harco, Inc., a wholly owned subsidiary of Rite Aid. (*Id*).[2]

On April 1, 2004, this court ordered that limited discovery be conducted on the matter of the proper party defendant. (Doc. 13). The defendant now argues that discovery has confirmed that it does not own the store in question and is not a proper party defendant. (Doc. 15). The plaintiffs contend that evidence gleaned from discovery demonstrates the defendant's liability. (Doc. 14).

## MOTION TO STRIKE

The defendant asks this court to strike the three affidavits submitted by the plaintiffs in opposition to the defendant's motion. The defendant initially filed a motion to strike the first affidavit of William Price (doc. 7), which is dated January 8, 2004. (Doc. 8). In its reply brief that is offered in support of the motion for summary judgment, the defendant also objects to the June 21, 2004 affidavits of William Price used by the plaintiffs in their response to the motion for summary judgment. (Doc. 15 at 5). The defendant asserts that the affidavits contain inadmissible hearsay and have not been properly authenticated.

FEDERAL RULE OF CIVIL PROCEDURE 56 states, in pertinent part, that affidavits in support of or in opposition to a motion for summary judgment ". . . shall be made on personal knowledge, shall set forth facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." FED. R. CIV. P. 56 (e). "If a supporting or opposing affidavit fails to conform to Rule 56(e), the opposing party may move to strike the nonconforming portion [or portions]." *Ali v. City of Clearwater*, 915 F. Supp. 1231,

---

[2]As defendant's Rule 12(b)(6) motion relied principally upon the affidavits of James J. Comitale, Melissa Coffman, and Kenneth C. Black, the court treats the motion as one for summary judgment. Fed. R. Civ. P. 12(b).

1236 (M.D. Fla. 1996), citing *Interfase Marketing, Inc. v. Pioneer Technologies Group, Inc.*, 1993 WL 229601, *2 (M.D. Fla. June 23, 1993) and *Barneby v. E.F. Hutton & Co.*, 715 F. Supp. 1512, 1529 (M.D. Fla. 1989).

### First Price Affidavit (dated January 8, 2003)

In his first affidavit, Price describes his conversations with Elsa Loftin, the manager of the Northport store, and with Robin Blain, a member of the defendant's Public Relations office. (Doc. 7). Specifically, Price states that Loftin told him during their conversation that (1) the employees of the store were paid by the defendant; (2) the defendant administered the store; and, (3) the store carried the name and company logo of the defendant. (Doc. 7 at ¶¶ 3-4). Blain also told Price that the defendant's proper address for service of correspondence was the defendant's corporate headquarters in Camp Hill, Pennsylvania. (*Id.* at ¶ 3).

The definition of hearsay, the express exceptions to the hearsay rule found in FEDERAL RULES OF EVIDENCE 803 or 804, and Rule 807's residual exception is do not demonstrate admissibility under the circumstances. The only provision of the Rules that arguably might be applicable is Rule 801(d)(2), regarding admissions by a party opponent. FED. R. EVID. 801(d)(2).

Presuming that Loftin is an employee of the defendant, her statements to Price would be admissible under Rule 801(d)(2)(D), which provides that "a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship" is not hearsay. FED. R. EVID. 801(d)(2)(D). Employee compensation, the identity of the party who oversaw the store's day-to-day operations, and the store's address for service are all matters within the scope of Loftin's position as store manager.

Additionally, Loftin testified that she is the defendant's employee. This is a matter likely

3

to be within her knowledge and experience. (Loftin Dep. at 8). The defendant has not disputed this portion of her testimony. The court, therefore, must accept this information at this juncture. It notes, however, that the court's conclusion on the merits of the motion would not be altered even if this testimony were excluded. The motion to strike this portion of Price's affidavit is due to be denied.[3]

The admission of a party opponent provision just discussed does not have the same import concerning the statements attributed to Blain. Based on the information in the record, the court is unable to determine whether Blain occupies a position that would make her statements binding on the defendant pursuant to Rule 801(d)(2). To be admissible, Blain would either have to have been "authorized by the [defendant] to make a statement concerning the subject" or the statement would have to be "concerning a matter within the scope of the agency or employment" relationship between Blain and the defendant. FED. R. EVID. 801(d)(2)(C) & (D). Premised on the information in the record, the court is unable to determine whether Blain's position with the defendant affords her the responsibilities or authority to make such statements that would be binding on the defendant. Accordingly, this portion of the affidavit is struck. As before, the court's notes that the decision concerning the exclusion of this evidence from consideration does not impact the ultimate resolution on the pending motion. Regardless of whether Price's first affidavit is considered or not, the defendant's motion is due to be denied.

### Second and Third Price Affidavits (dated June 21, 2004)

In his second affidavit, Price affirms that the six attached photographs were (1) taken by

---

[3] The court further notes that most of the information concerning her statements would remain in the record regardless because she testified at her deposition concerning these same matters. *See* Loftin Dep.

him on March 31, 2004, and (2) that the photographs are correct and accurate representations of buildings, persons, and commercial products that he photographed on the grounds of the Northport store in question. (Doc. 14, Attachment 1). In his third affidavit, Price states that he performed an internet search that identified the Northport, Alabama store as a Rite Aid store, and that the attached copies of his research are an accurate representation of the internet pages that he viewed. (*Id.*, Attachment 2).

The court finds that this material is appropriate for consideration on the present motion. Neither affidavit contains inadmissible hearsay. The affidavits confirm that Price took the attached photographs and performed the internet search that led him to the defendant's internet site. He has the requisite personal knowledge concerning the matters discussed in the affidavit to overcome any such objection. Further, there is no indication that Price would be incompetent to testify as to the content of the affidavits at trial. Finally, the defendant has made no showing as to why these items in the affidavits would not be admissible at trial. Accordingly, to the extent that the defendant seeks to strike this evidence, the objection is due to be denied.

## SUMMARY JUDGMENT STANDARD

Because the court has considered evidence outside the pleadings, the motion must be treated as one for summary judgment in accordance with FEDERAL RULE OF CIVIL PROCEDURE 56. FED. R. CIV. P. 12(b). Accordingly, summary judgment is to be granted only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the declarations, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). The party asking

for summary judgment "bears the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided by trial. Only when that burden has been met does the burden shift to the nonmoving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S. Ct. 1598, 1608, 26 L. Ed. 2d 142 (1970).

The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of her case on which she bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23; *see* FED. R. CIV. P. 56(a) and (b). Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324. The nonmoving party need not present evidence in a form necessary for admission at trial; however, the movant may not merely rest on the pleadings. *Id.*

After a motion has been responded to, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). The substantive law will identify which facts are material and which are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). "[T]he judges's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

## DISCUSSION

On or about October 1, 2001, Marie Burritt was in the Northport store allegedly owned by the defendant, when she slipped on a substance on the floor and fell. (Doc. 1 at ¶¶ 5-6). The plaintiffs allege that her fall proximately ensued from the defendant's negligence or wantoness in that the defendant "knew or should have known that a dangerously slippery substance was on the floor of its store," yet allowed it to remain without either cleaning it up or warning her of its presence. (Doc. 1 at ¶ 6).

### Proper Party Defendant

The defendant asserts that since the Northport store where the plaintiff fell is not its property, but that of its subsidiary, Harco, Inc., it is not the proper defendant. It therefore concludes that the plaintiffs have failed to state a claim against Rite Aid. (Doc. 4 at 3). The defendant cites *In re: Silicone Gel Breast Implants Products Liability Litigation*, 837 F. Supp. 1128, 1140 (N.D. Ala. 1993), *partially vacated on other grounds,* 887 F. Supp. 1455 (N.D. Ala. 1995), citing *Parrillo v. Giroux Co.*, 426 A.2d 1313, 1321 (R.I. 1981), as authority for the principle that the "mere fact that there exists a parent-subsidiary relationship between the two corporations is insufficient cause to impose liability on the parent for the torts of the subsidiary." (Doc. 4 at 2-3).

The court agrees that the defendant cannot be responsible for its subsidiary's alleged torts simply because of the parent-subsidiary relationship. The plaintiffs, however, do not rely on the existence of the parent-subsidiary relationship to undergird their claim that the defendant is a proper party to this action. Instead, the plaintiffs allege the defendant is liable premised on direct participation. Accordingly, the plaintiff argues that the defendant's reliance on *In re: Silicone*

*Gel Breast Implants Products Liability Litigation* is inapposite.

In contravention of the plaintiffs' claim, the defendant asserts that it does not own the store in question. The defendant has submitted the affidavits of Melissa Coffman, Senior Manager of Licensing for Rite Aid; Kenneth C. Black, Vice President of Tax for Harco, Inc.; and James Comitale, Senior Associate Counsel for Rite Aid, in support of its argument. Coffman states that the defendant applied for all federal, state, and local licenses for the Northport store to be issued in the name of Harco, Inc., d/b/a Rite Aid #7401. (Doc. 10, Coffman Aff. at ¶ 2). Black states that the income derived from the Northport store is recorded as income to Harco, Inc., and is reported to state and federal entities in the name of Harco for tax purposes. (Doc. 10, Black Aff. at ¶¶ 4-5). Comitale's affidavit states that Harco was incorporated under Alabama law on December 7, 1967, and that it has been a "wholly owned subsidiary" of the Defendant since approximately September 30, 1997. (Doc. 3, Comitale Aff. at ¶ 2).

Although the record amply demonstrates Harco's ownership of the Northport store, the defendant presents no evidence refuting the plaintiffs' contention that the employees at the store are Rite Aid employees. The defendant does not even address, much less counter, the plaintiffs' evidence to this effect. The plaintiffs have submitted photographic evidence of the store itself that bears Rite Aid logos and signs and a picture of a store employee wearing a Rite Aid vest. The plaintiffs also have offered evidence that the defendant's website lists the store in question as one if its stores. (Doc. 14, Price Aff.). Still further, the plaintiffs deposed Loftin, the manager of the Northport store in question, who stated that she knows about Harco, Inc., and believes that she works for the defendant. (Loftin Dep. at 8 & 31). Specifically, Ms. Loftin testified that she is employed by the defendant, that her operations manual says "Rite Aid store, Operation

Manual," and that her personal paycheck is from the defendant. (*Id.* at 8 & 31).

The defendant's affiants do not rebut the plaintiffs' evidence that the defendant is a proper party to this action for purposes of the present motion. At the very least, a question of fact exists as to who controls these employees and whether the defendant is liable under the circumstances. The court cannot find at this juncture that the defendant is entitled to summary judgment as a matter of law.

### Borrowed Servant Claim

The plaintiffs alternatively claim that the defendant is liable under the borrowed servant doctrine. Though the court has denied the defendant's motion on other grounds, some discussion of this issue is warranted.

The plaintiffs cite a treatise description of the borrowed servant doctrine, but no caselaw. The plaintiffs reference the photograph of a Northport store employee wearing a Rite Aid vest, and allege that the defendant is liable under the borrowed servant doctrine because the store's employees wear vests bearing the defendant's corporate logo. The court notes that this is insufficient to implicate the borrowed servant doctrine without more.

If the legal elements of the borrowed servant doctrine were applied to this case, this basis for recovery remains tenuous at best. In *Ruiz v. Shell Oil Company*, 413 F.2d 310, 313 (5th Cir. 1969), the former Fifth Circuit articulated a nine-factor test for determining whether the borrowed servant doctrine is applicable in a given case. The court stated that the following factors must be considered: (1) control over the servant; (2) formal agreement between the two employers; (3) acquiescence by the servant to become employed by the new entity; (4) termination of the servant's employment with the original employer; (5) who provides the

"necessary instruments" for the work and the place where the work is to be done; (6) whether the servant performs for a "considerable" length of time; (7) the question of whose work is being performed; (8) who has the right to terminate the servant's employment; and (9) who is obliged to compensate the servant.[4]

To determine the applicability of these factors, the court would need more facts, including information concerning what control the defendant has over the Northport store employees; whether there was an agreement between Harco and the defendant as to their conduct and activities; who has authority to terminate the employees; who provides the "necessary instruments, if any, to perform the required tasks; the details of the working relationship with the defendant; and further details regarding the handling of compensation.

## CONCLUSION

For the reasons stated above, the court finds that the defendant's motion to strike (doc. 8) and the objections in the reply brief (doc. 15) are due to be granted in part and denied in part and the motion to dismiss (doc. 2) is due to be denied. An appropriate order will be entered.

DONE, this ___ day of October, 2004.

*John E. Ott*
JOHN E. OTT
United States Magistrate Judge

---

[4] At least one District Court in the Eleventh Circuit continues to apply these factors. *See Canty v. A. Bottachi, S.A. de Navigacion*, 849 F. Supp. 1552, 1557 (S.D. Fla. 1994). Alabama state courts also continue to apply the *Ruiz* test. *See Jarrell v. Bender Shipbuilding and Repair Co., Inc.*, 681 So. 2d 1092, 1094 (Ala. Civ. App. 1996). Florida state courts also apply this test. *See Babin v. North Florida Shipyards, Inc.*, 1997 WL 795067 (Fla. App. 1 Dist.).